Madeline H. NEWMAN, Pandora D. Baker, Florence G. Middleton, Ruthie S. Backman, on behalf of themselves and all others similarly situated, and Ulhma D. Warren, on behalf of herself and all others similarly situated, Appellants,

v.

Dr. Alton C. CREWS, individually and as Superintendent of the Charleston County School District; Keith Thompson, individually and as a member and representative of members of the Board of Trustees, Charleston County School District, and Board of Trustees, Charleston County School District, Appellees.

No. 79–1070.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 2, 1980.

Decided June 4, 1981.

---

Ray P. McClain, Charleston, S. C. (McClain & Derfner, Charleston, S. C., on brief) for appellants.

Augustine T. Smythe, Susan Smythe, Charleston, S. C. (Buist, Moore, Smythe & McGee, Charleston, S. C., on brief) for appellees.

Before HAYNSWORTH, Senior Circuit Judge, FIELD, Senior Circuit Judge, and HALL, Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

Since 1945 the South Carolina Board of Education has certified its teachers on the basis of their scores on the National Teacher Examinations ("NTE"). In *United States v. South Carolina,* 445 F.Supp. 1094 (D.S.C.1977), *aff'd mem.,* 434 U.S. 1026, 98 S.Ct. 756, 54 L.Ed.2d 775 (1978), a three-judge district court held that even though prospective black teachers obtained disproportionately low scores on the NTE, the use of those scores for certifying teachers and for determining their salaries violated neither the Constitution nor Title VII of the Civil Rights Act of 1964. The present case is a close relative of *United States v. South Carolina* ; the issue is whether the use of certification grades for determining the re-cipients of a pay raise violates the Constitution or Title VII.

The court in *United States v. South Carolina* described in detail the certification systems employed in South Carolina since 1945. *See* 445 F.Supp. at 1101–02. For our purposes, a brief summary is sufficient. From 1945 through 1968, the State Board issued four grades of certificates: A, B, C, and D. In 1969 the State Board began to issue two certificates—professional and warrant—rather than A, B, C, and D certificates. Warrant teachers were classified administratively with professional certificate holders for their first five years of teaching. If by that time a warrant teacher had not obtained a professional certificate, his salary was frozen at the five-year level. In 1976 the Board again revised the certification system, eliminating prospectively the warrant status and issuing the professional certificate to those who obtained a minimum NTE score or higher.

Teachers are permitted to take the NTE an unlimited number of times. Each teacher retains the certification issued at the time he last took the NTE, despite the subsequent revisions in the certification system. There are, then, practicing teachers certified either as A, B, C, or D; practicing teachers certified either as professional or warrant; and, since 1976, teachers who obtained professional certification as a prerequisite to practice.[1] Apparently, A certificate holders, professional certificate holders, and for the first five years of teaching, warrant certificate holders are compensated according to the same pay scale.

Teacher salaries in South Carolina are paid from state funds and local supplements. The formula for state aid to a local school district factors in the types of certifi-

---

1. This description of the certification system is sufficient, though there are irrelevant, complicating details. For example, from 1945 until 1957 certification as A, B, C, or D depended on an individual's NTE score relative to all the other NTE scores. Beginning in 1957, the score requirement for each grade was absolute rather than relative. Also, under the four-graded system, only the score for the Common Examinations portion of the NTE was relevant. Since 1969 both the Common Examinations and the Area Examination portions have been relevant. Moreover, since 1976 the minimum scores for professional certification have varied with the field of teaching specialty.

One complicating factor that is relevant—the minimum score for warrant status compared to the minimum scores for B and C certification—will be discussed in the text.

cates held by the district's teachers. The local supplement provided by the Charleston County School District has also differentiated among teachers on the basis of certification.

In July 1976 the Board of the Charleston County School District increased the local supplement for all teachers by $300. In December 1976 the Board granted an additional raise to A and professional teachers. Warrant teachers also received the raise, although there is no indication that the Board directed or even discussed their inclusion in the benefitted class. Apparently, the warrant teachers were included because they were classified administratively with A and professional teachers.

The racial composition of A and professional teachers is predominantly white. B and C teachers, as well as warrant teachers, are predominantly black. The statistics reveal that two percent of white teachers and 38.6% of black teachers were denied the pay raise.

Challenging this pay raise, the plaintiffs, representing the class of all Charleston County School District teachers who were denied the pay raise, filed suit against the superintendent and the Board of Trustees of the Charleston County School District. The defendants counter-claimed for declaratory relief. After a nonjury trial,[2] the district court entered judgment for the defendants.

Although other claims were raised and rejected below, the plaintiffs on appeal press only two claims. First, the plaintiffs claim that granting the pay raise to A and professional teachers, but not to B and C teachers, violated Title VII. The district court held that this claim was foreclosed by *United States v. South Carolina.* Second, the plaintiffs claim that granting the pay raise to warrant teachers, but not to B and C teachers whose NTE scores were higher than the minimum score required for warrant status, was so arbitrary as to violate the Constitution. The district court rejected this claim, finding a rational basis for

the inclusion of warrant teachers in the benefitted class.

We agree with the district court's conclusions and affirm.

### I. The Title VII Claim

■ The denial of the pay raise had a disproportionate impact on black teachers. The defendants therefore have the burden of proving that the challenged employment practice serves legitimate employment objectives of the school district. *United States v. South Carolina,* 445 F.Supp. 1094, 1112 (D.S.C.1977), aff'd mem., 434 U.S. 1026, 98 S.Ct. 756, 54 L.Ed.2d 775 (1978). *See Dothard v. Rawlinson,* 433 U.S. 321, 331, 97 S.Ct. 2720, 2728, 53 L.Ed.2d 786 (1977); *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 425, 95 S.Ct. 2362, 2375, 45 L.Ed.2d 280 (1975); *Griggs v. Duke Power,* 401 U.S. 424, 431, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971). In *Robinson v. Lorillard,* 444 F.2d 791, 798 (4th Cir. 1971), this court stated that

the challenged practice must effectively carry out the business purpose it is alleged to serve; and there must be available no acceptable alternative policies or practices which would better accomplish the business purpose advanced, or accomplish it equally well with a lesser differential racial impact.

The three-judge district court in *United States v. South Carolina* found that the NTE adequately measures the prospective teacher's familiarity with the content of teacher training programs in South Carolina. The court held that NTE scores constitute a permissible basis for differentiating prospective teachers through a certification system. 445 F.Supp. at 1112–16. Regarding the linkage of the salary system to the certification system, the court held that the State had shown both a rational relationship to a legitimate employment objective and business necessity. *Id.* at 1116. The objective identified by the State in that case was to provide a financial incentive for B and C teachers to expand their substantive knowledge and to upgrade their capabilities for effective teaching. *Id.*

---

2. The relevant facts were not disputed.

■ The district court found as a fact that the purpose of the Board in granting the pay increase "was to improve the ability of the Charleston County School District to attract teachers whom the Board thought to be best qualified." Bearing in mind that in *United States v. South Carolina* the identified objective of the State in maintaining the differentials was to encourage B and C certificated teachers to supplement their study and improve their teaching skills, the plaintiffs contend that the two objectives were so dissimilar that the earlier decision cannot control the result here.

The two stated purposes are but two facets of the same stone, however. The objective of the Charleston County School Board, as the objective of the State, was to improve the quality of teaching. Self-improvement by lowly rated teachers to enable them to achieve a higher rating serves that objective. Pay increases for the highest rated teachers enhances the School Board's capacity to attract highly rated teachers from the outside. Moreover, an increase in the differential tended to lend further encouragement to B and C rated teachers to improve their skills and to attain a higher rating. If use of NTE scores is appropriate for the creation and maintenance of salary differentials, it is surely appropriate for use in later decisions to increase those differentials.

Because he thought the Title VII inquiry was foreclosed by *United States v. South Carolina*, the district judge did not consider a further contention that there is an available alternative that would achieve the business purpose with a reduced discriminatory effect. The plaintiffs offered testimony by a Charleston County School District principal that once every three years an incumbent teacher is evaluated in a joint session between teacher and principal. In the evaluation process, areas of agreement between principal and teacher are recorded, and areas of disagreement are noted. With respect to each teacher, the process results in one of four conclusions about the teacher's performance ranging from outstanding to unacceptable.

Such a process of performance evaluation may be useful, particularly in identifying to the teacher areas of possible improvement, but there is nothing in the testimony regarding that evaluation process to suggest that the School Board should have recognized it as a more appropriate alternative than the NTE for awarding salary increases. The evaluations are entirely subjective and inexact. There is no reason to suppose there would not be noticeable differences between evaluations of one principal and those of another. Subjective evaluations necessarily involve substantial potential for discrimination in application. The NTE at least has the virtue of complete objectivity. Moreover, the subjective evaluation system cannot be employed to grade teachers seeking positions in the system for the first time.

## II. The Constitutional Claim

■ Because South Carolina's certification system has so often been revised, the pay raise based on certification has produced an anomalous result. Warrant teachers received the pay raise. B and C teachers, most of whom obtained scores on the Common Examinations portion of the NTE which were higher than the minimum required for warrant status, were denied the pay raise. The plaintiffs claim that this result is so arbitrary and capricious as to be in violation of due process and works a violation of the equal protection clause.

Because both the class of B and C teachers and the class of warrant teachers are predominantly black and because there is no fundamental right to a pay raise, the challenged classification does not implicate heightened constitutional scrutiny. The classification offends the Constitution only if it "rests on grounds wholly irrelevant to the achievement of the State's objective." *McGowan v. Maryland*, 366 U.S. 420, 425, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961).

The district court correctly pointed out the difficulties with comparing warrant teachers with B and C teachers. B and C teachers were rated only on the Common Examinations portion of the NTE. Warrant teachers were required to obtain a

minimum score on the Common Examinations portion and a minimum score combining the Common and Area Examinations portions. Because warrant teachers were graded essentially on two tests, the fact that B and C teachers would have passed one of those tests does not necessarily entitle them to the same treatment as warrant teachers. Another important distinction is that the salaries of warrant teachers are frozen at the five-year level while B and C teachers are entitled to longevity increases.

In 1969 when the warrant classification was first introduced, a decision was made that warrant teachers would be paid on the same level with professional teachers for the first five years, after which the salary of the warrant teacher was frozen unless he or she attained a professional rating. For that reason, for compensation purposes, the warrant teachers had been classified with the professionals. There were fewer than one hundred warrant teachers, and the School Board may have thought that the policy of compensation equality during a warrant teacher's first five years and the alternative inconvenience of separating the warrants from the professionals justified extension of the pay increase to the warrant teachers.

There is no indication, however, that the members of the Board even discussed inclusion of the warrants in the benefitted class. The pay increase was considered in the context of teachers holding A and professional certificates. Seemingly, inclusion of the warrants with the professionals with whom they were classified for salary purposes was an inadvertence. Such an inadvertence, however, is not an error of constitutional dimension.

*AFFIRMED.*