**Robert E. LEWIS, et al.**

v.

**AT & T TECHNOLOGIES, INC.**

**David CONOLLY, et al.**

v.

**AT & T TECHNOLOGIES, INC.**

**Civ. Nos. HM–80–2733, HM–83–1399.**

United States District Court,
D. Maryland.

June 17, 1988.

Norris C. Ramsey, Baltimore, Md., for plaintiffs.

Leonard E. Cohen, Mary E. Pivec, and Jeffrey Rockman, and Frank, Bernstein, Conaway & Goldman, Baltimore, Md., for defendant.

## MEMORANDUM AND ORDER

HERBERT F. MURRAY, District Judge.

### I. *Introduction*

Presently before the Court is the motion of the defendant AT & T Technologies, Inc. ("AT & T"), for summary judgment against the plaintiffs in Civil No. HM–83–1399, David Conolly and Samuel Lamont Turner. Civil No. HM–83–1399 has previously been consolidated with Civil No. HM–80–2733, in which Conolly and Turner were also plain-

tiffs. For simplicity's sake, Civil No. HM–80–2733 shall hereinafter be referred to as "Conolly I" and Civil No. HM–83–1399 shall be referred to as "Conolly II."

The Court has considered AT & T's motion and memorandum (Paper No. 96),[1] the plaintiffs' memorandum in opposition thereto (Paper No. 100), supplemental letters filed by the parties on April 29, 1987 (Paper Nos. 103 and 104), and a supplemental memorandum by AT & T (Paper No. 106). The Court is now prepared to rule on this motion. No oral hearing is necessary.

In addition to its motion for summary judgment, AT & T has, in the supplemental memorandum identified above as Paper No. 106, asked that the Court reconsider its Order dated April 17, 1985 (Paper No. 102), insofar as it denied in part AT & T's motion for summary judgment against plaintiff Robert E. Lewis in Conolly I. The Court is prepared to rule on this request as well.

## II. *Procedural and Factual History*

Because of the relatively complex procedural posture of this case, a brief synopsis of the procedural and factual history is in order.

Conolly and Turner, along with Robert E. Lewis, Mitchell G. Ledbetter, and Warren Turner, commenced the Conolly I suit in October, 1980, complaining of racial discrimination in AT & T's[2] promotions, wages, job assignments, performance ratings, and training. In March, 1982, AT & T responded to adverse economic conditions by laying off 99 employees and downgrading 142 employees. Conolly and Turner were among those laid off.

In response to the layoff, Conolly and Turner initiated the Conolly II suit. The complaint in that case claimed that AT & T had retaliated against them for their prior charges of racial discrimination by giving them poor performance ratings; by laying them off in March, 1982; by denying them recall privileges; and by otherwise treating them differently in their terms and conditions of employment. In addition, the complaint charges disparate treatment of the plaintiffs by AT & T on the basis of their race. Specifically, the complaint avers that, in the March 1982 reduction in force, black engineering associates were laid off in numbers disproportionate to their representation in AT & T's workforce. Plaintiffs sue individually in Conolly II and bring no classwide claims.[3] The statutory basis of plaintiffs' retaliation claim is 42 U.S.C. § 2000e–3(a). The statutory basis of plaintiffs' disparate treatment claim is 42 U.S.C. §§ 1981 and 2000e–2.[4]

The Court will consider each claim in turn after a review of the standards for evaluating a motion for summary judgment.

## III. *Summary Judgment Standards*

Rule 56 of the Federal Rules of Civil Procedure requires a court to render judgment for the moving party "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

---

1. "Paper No." refers to the number assigned to a filing on the docket sheet of the Court file. After the consolidation of Conolly I and II, filings pertaining to Conolly II were entered on the docket of Conolly I. Paper No. 96 is therefore the 96th filing entered on Conolly I's docket.

2. Actually, AT & T Technologies, Inc. was called Western Electric Company at the time Conolly I was instituted and for some time thereafter. For convenience's sake, however, the Court refers to the defendant employer as AT & T, notwithstanding the technical inaccuracy.

3. Plaintiffs' original complaint in Conolly II (Paper No. 1), apparently sought relief for a class of plaintiffs but the "First Amended Complaint"

(Paper No. 7), deleted all references to class actions or a class of plaintiffs. There has, in addition, been no motion to certify a plaintiff class. The Court therefore concludes that any class-action claims that may have been raised initially have been abandoned by the plaintiffs in the course of litigation.

4. Because the elements of a Title VII case of racial discrimination are the same as the elements of a *prima facie* claim under 42 U.S.C. § 1981, *see Warren v. Halstead Industries, Inc.,* 802 F.2d 746, 754 (4th Cir.1986), the Court will not engage in a separate analysis of the § 1981 claim.

that the moving party is entitled to summary judgment as a matter of law." F.R.Civ. P. 56(c). Rule 56 also provides: "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." F.R.Civ.P. 56(e)

The standard for evaluating a motion for summary judgment under Rule 56 mirrors the standard for determining a motion for a directed verdict. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Thus, a court must inquire whether there is sufficient evidence for a trier of fact to find for the nonmoving party. "The mere existence of a scintilla of evidence in support of the plaintiff's case is insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252, 106 S.Ct. at 2512. When a motion for summary judgment is supported by affidavits and other documentary evidence, Rule 56(e) imposes on the nonmoving party the obligation to come forward with some evidence setting forth specific facts showing that there is a genuine issue for trial. If the nonmoving party merely rests upon his allegations, the court must, "if appropriate," enter summary judgment against that party. F.R.Civ.P. 56(e). Of course, summary judgment is not appropriate merely because a plaintiff has failed to produce evidence in opposition to a defendant's summary judgment motion; otherwise the "if appropriate" language of Rule 56(e) would be rendered superfluous. In *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970), the Supreme Court held that summary judgment is inappropriate where defendant has failed to rebut all material allegations from which a jury as a matter of law may draw inferences of liability, even where plaintiff produced no evidence in response to the summary

judgment motion. Nevertheless, if the movant can demonstrate to the trial court that there is an absence of evidence to support the nonmoving party's case, then summary judgment is warranted. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986) (explaining *Adickes*).

When the validity of a complaint turns on questions of an employer's motive and intent, a court must be especially cautious in granting summary judgment. *See Morrison v. Nissan Co., Ltd.*, 601 F.2d 139, 141 (4th Cir.1979).

With these standards in mind, the Court now focuses its attention on the specific claims made in this case.

## IV. *Disparate Treatment*

To the extent that plaintiffs' claims of disparate treatment on account of their race are based on claims made in Conolly I, they are barred by *res judicata*. *See* Order of Court, Civil No. HM–80–2733, June 16, 1983 (Black, J.) (granting defendant's motion for partial summary judgment on the grounds of *res judicata*). Plaintiffs concede this much.

To support their disparate treatment claim, plaintiffs have proffered evidence of legally significant statistical disparities between the number of black engineering associates laid off in March 1982 and the number of black associates that one would have expected to be laid off given the proportion of blacks in the pool of engineering associates. At the time of the layoff, there were a total of four hundred seventy engineering associates, of whom sixty-five were black. Twenty-six engineering associates, ten of whom were black, were terminated in the layoff. Under either the binomial or hypergeometric method of calculation, *see E.E.O.C. v. Federal Res. Bank*, 698 F.2d 633, 651 n. 25 (4th Cir.1983) (setting forth binomial and hypergeometric formulas), *rev'd on other grounds*, 467 U.S. 867, 104 S.Ct. 2794, 81 L.Ed.2d 718 (1984), there was a standard deviation value greater than three with respect to the layoff. The Fourth Circuit has stated that standard deviations of more than three raise a legit-

imate inference of discrimination. *E.E.O. C. v. American Nat'l Bank*, 652 F.2d 1176, 1192 (4th Cir.1981), *cert. denied* 459 U.S. 923, 103 S.Ct. 235, 74 L.Ed.2d 186 (1982). *See also Castaneda v. Partida*, 430 U.S. 482, 496–97 n. 17, 97 S.Ct. 1272, 1281 n. 17, 51 L.Ed.2d 498 (1977) (if difference between expected value and observed number is greater than two or three standard deviations, then hypothesis that difference is due to chance is suspect); *Lilly v. Harris–Teeter Supermarket*, 720 F.2d 326, 336 & n. 20 (4th Cir.1983) (by conclusively ruling out chance as the cause of the disparity in the termination rates—in showing more than three standard deviations—plaintiffs made out a *prima facie* case of classwide discrimination), *cert. denied* 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 539 (1984). When considered in the light most favorable to the plaintiffs, the statistical evidence raises an inference of racial disparate treatment. *See Ardrey v. United Parcel Service*, 798 F.2d 679, 684 (4th Cir.1986) (statistical evidence relevant in disparate treatment claims because such evidence is often crucial for plaintiff's attempt to establish an inference of discrimination).

 In *Robertson v. State Dep't of Personnel*, 481 F.Supp. 108 (D.Md.1978), the Court adapted the Supreme Court's four-part test for establishing a case of discrimination in employment, *see McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to the context of a discriminatory discharge claim. Under this test, the plaintiff bears the burden of showing (1) that he is a member of a protected class; (2) that he was laid off; (3) that he was qualified to retain the position from which he was discharged; and (4) that the employer retained employees with qualifications similar to that of the plaintiff. In this case there is no question that Conolly and Turner belong to a protected class, were laid off, and were at least marginally qualified for their positions. They have pointed to no evidence as to item (4) of the test, but this deficiency is not fatal to their claim. It is possible to establish a *prima facie* case without satisfying all the *McDonnell Douglas* criteria. *Diaz v. American Telephone and Telegraph*, 752

F.2d 1356, 1361 (9th Cir.1985). A *prima facie* case may be established by other kinds of evidence supporting an inference of discrimination. *Gay v. Waiters' and Dairy Lunchmen's Union*, 694 F.2d 531, 538 (9th Cir.1982). *See also Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253–54 n. 6, 101 S.Ct. 1089, 1093–94 n. 6, 67 L.Ed.2d 207 (1981) (*McDonnell Douglas* standards not inflexible because the facts will necessarily vary in Title VII cases). In this case, the plaintiffs have pointed to statistical evidence sufficient to support a finding that something other than chance was responsible for the fact that 38 percent of the engineering associates laid off were black even though blacks constituted only 13.8 percent of the engineering associates pool. Because the plaintiffs were part of the group of discharged employees, one can legitimately infer that their layoff was racially motivated. This inference of discrimination from the statistical evidence serves as an adequate substitute for item (4) of the *McDonnell Douglas* formulation because that criterion is self-evidently intended to supply the necessary inference of discrimination. Though plaintiffs' case might be stronger if they could point to evidence that less qualified engineering associates were kept on at the facility, this kind of evidence is particularly hard to come by when, as here, layoffs are based on subjective performance ratings that may have been influenced by racial bias or, as plaintiffs assert in their retaliation claim (discussed below), by a desire to punish them for asserting their Title VII rights.

Once the plaintiffs have proffered evidence sufficient to establish a *prima facie* case, the burden shifts to the defendant to produce evidence that the plaintiffs were discharged for a legitimate nondiscriminatory reason. *Burdine*, 450 U.S. at 254, 101 S.Ct. at 1094. AT & T has done so in this case but that fact does not entitle it to summary judgment because "when a plaintiff has established a *prima facie* inference of disparate treatment through direct or circumstantial evidence of discriminatory intent, he will necessarily have raised a

genuine issue of material fact with respect to the legitimacy or bona fides of the employer's articulated reason for its employment decision." *Lowe v. City of Monrovia,* 775 F.2d 998, 1009 (9th Cir.1985). Thus, while some courts have held that a motion for summary judgment must be evaluated in light of the order and allocation of proof applicable to the trial stage— i.e., plaintiffs' *prima facie* case shifts burden to defendant to produce evidence of legitimate nondiscriminatory reasons for an adverse employment action which, in turn, requires plaintiff to prove that defendant's proffered explanation is merely a pretext for discrimination—that was set forth in *Burdine, supra,* it is apparently an exercise that will only rarely have any functional utility.

In *Dea v. Look,* 810 F.2d 12 (1st Cir. 1987), the First Circuit held that merely making out a *prima facie* case of age discrimination does not automatically save a plaintiff from a summary judgment motion. The Court affirmed the trial court's entry of summary judgment because the plaintiff had failed to produce evidence that his employer's proffered nondiscriminatory reason for terminating him was merely pretextual. Similarly, in *Seville v. Martin Marietta Corp.,* 638 F.Supp. 590, 595 (D.Md.1986) Judge Motz of this District Court entered summary judgment for the defendant because the plaintiff provided only insubstantial evidence that the employer's nondiscriminatory reasons for its fringe benefits policy were pretextual. *See also Diaz v. American Telephone & Telegraph,* 752 F.2d 1356, 1362 (suggesting that summary judgment might be appropriate where plaintiff has established a *prima facie* case but not produced evidence that defendant's nondiscriminatory explanation is pretextual).

■ The Court is not persuaded that these cases control the disposition of this matter. The strength of *Seville* is diminished by the fact that the Court there had substantial doubts whether the plaintiffs had even made out a *prima facie* case. In fact, though the Court required the plaintiffs to produce additional evidence of pre-

text to survive the summary judgment motion, in the final analysis the Court's decision was based on insufficient evidence supportive of an inference of discriminatory intent, one of the elements of a *prima facie* case. *Seville v. Martin Marietta Corp.,* 638 F.Supp. at 595. The First Circuit's decision in *Dea* cannot be distinguished on this basis—the trial court had unequivocally found evidence sufficient for plaintiff to make out a *prima facie* case— but this Court prefers the reasoning of *Lowe, supra,* that the *"trier of fact* may consider the same evidence that the plaintiff has introduced to establish a *prima facie* case in determining whether the defendant's explanation for the employment decision is pretextual." *Lowe v. City of Monrovia,* 775 F.2d at 1008. The Fourth Circuit has made comments along similar lines. *Ardrey v. United Parcel Service,* 798 F.2d at 684 (statistical evidence that helps to establish a *prima facie* case may also aid in showing that defendant's articulated nondiscriminatory reason is pretextual). Once a court has determined that there is sufficient evidence to make out a *prima facie* case of employment discrimination, then evidence of a nondiscriminatory reason for the discharge does no more than pose a factual issue for the factfinder to resolve after having the opportunity to evaluate the credibility of the witnesses through first-hand observation of their demeanor at trial.

■ The Court notes that the Fourth Circuit has indicated that "statistics cannot alone prove the existence of a pattern or practice of discrimination...." *Warren v. Halstead Industries, Inc.,* 802 F.2d 746, 753 (4th Cir.1986). *But see E.E.O.C. v. American Nat'l Bank,* 652 F.2d at 1189 (agreeing with district court's conclusion to make out *prima facie* case of discriminatory hiring patterns or practices). This *dicta* is not controlling in this case because plaintiffs are not claiming that AT & T engaged in a pattern or practice of racial discrimination. Their claims are that they were subject to individual instances of racial discrimination when they were laid off in March 1982. Establishing a *prima facie* patterns and practices case is logically

more onerous than a simple case of disparate treatment because such a claim requires proof that racial discrimination was the defendant's standard operating procedure and not just an isolated discriminatory act. *See Teamsters v. United States,* 431 U.S. 324, 336, 97 S.Ct. 1843, 1855, 52 L.Ed. 2d 396 (1977); *E.E.O.C. v. Federal Reserve Bank,* 698 F.2d at 642.

The defendant has not disputed the accuracy of the data upon which plaintiffs base their statistical evidence. Rather, the defendant argues that because 96 percent of the engineering associates laid off in March 1982 had been hired in 1978 or later, this is the appropriate pool of employees from which to derive the statistics. If the statistics are calculated on the basis of this pool of recently hired engineering associates, as the defendant claims, then there would be no legally significant disparity between the number of black associates terminated and the number that one would expect to be terminated given the proportion of blacks in the pool. This argument is unpersuasive because AT & T did not limit the layoffs to the group of engineering associates hired in 1978 and thereafter. It may be, as the defendant suggests, that recently hired employees naturally had lower performance ratings than their more senior counterparts because of the experience differential, but this is not an undisputed fact and in any event at most serves only to raise a genuine factual issue whether the disproportionate layoffs of black associates were motivated by racial animus or by consideration of reliable performance ratings.

■ The Court notes that plaintiffs and defendant indicated that they believe plaintiffs have alleged a disproportionate impact claim. To make out a disparate impact claim, plaintiffs must show that an objective standard or test, applied evenly to affected employees, had a disproportionate impact on blacks and cannot be justified by business necessity. *Teamsters,* 431 U.S. at 335–36 n. 15, 97 S.Ct. at 1854–55 n. 15. No such claim is made here. Rather plaintiffs contend that AT & T's subjective performance ratings resulted in racial discrimination against them.

AT & T claims that *General Building Contractors Ass'n v. Pennsylvania,* 458 U.S. 375, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) holds "that the adverse impact or statistical case is unavailable to establish" intentional discrimination under 42 U.S.C. § 1981. Apparently, the defendant is arguing that an intention to discriminate cannot be inferred from statistical evidence. The Court finds nothing in *General Building Contractors* to support such a proposition.

■ Because there is sufficient evidence to raise genuine issues of material fact, AT & T's motion for summary judgment will be denied insofar as it pertains to the plaintiffs' disparate treatment claim.

## V. *Retaliation Claim*

The heart of plaintiffs' retaliation claim is that AT & T took adverse employment actions against them—including giving them poor performance ratings, laying them off, and making them ineligible for rehire—because they both filed charges of discrimination with the EEOC—Conolly in 1978 and Turner in 1980—and they both joined in a lawsuit (Conolly I) against AT & T in October 1980.

■ Under Title VII, it is "an unlawful employment practice for an employer to discriminate against any of his employees ... because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e–3(a). To make out a *prima facie* retaliation claim, an employee must show (1) that he was engaged in protected activity; (2) that the employer took adverse employment action against him; and (3) that there is a causal connection between (1) and (2). *Ross v. Communications Satellite Corp.,* 759 F.2d 355, 365 (4th Cir. 1985).

■ Plaintiffs have sufficient evidence to make out a *prima facie* case of retaliation. They participated in protected activity when they brought charges of racial discrimination against AT & T. AT & T

took adverse action against them when it gave them poor performance ratings that resulted in their being part of the group laid off in March, 1982. In addition, their supervisors recommended that they not be considered for rehire. There is no direct evidence of a causal relationship between the protected activity and the adverse employment actions, but the temporal proximity of the two sets of circumstances is sufficient to create an inference of causation. *See Warren v. Halstead Industries, Inc.,* 802 F.2d at 758 (temporal proximity of less than three weeks between filing of EEOC charge and discharge of plaintiff can raise an inference of a retaliatory motive); *E.E.O.C. v. St. Joseph Paper Co.,* 557 F.Supp. 435, 439 (W.D.Tenn.1983) (plaintiff's discharge hours after EEOC fact finding conference raises a very strong inference of retaliation).

Conolly received a performance rating of 84.5 sometime in the Fall of 1980. It is unclear whether the rating was assigned to him before or after he filed Conolly I. Assuming it was assigned after Conolly I was filed, it would have been soon thereafter (Conolly I was filed October 14, 1980) and there is an inference that this very poor performance rating (only one engineering associate in Conolly's subgroup scored lower) was in retaliation for his initiation of Conolly I. Turner apparently received a performance rating of 84.0 (the lowest rating assigned to engineering associates in his sub-branch that year) in November, 1980. *See* Aff. of John Benjamin at 8. There is therefore an inference of retaliatory motive as to Turner as well.

Both employees were laid off in March, 1982 on the basis of their poor performance ratings in November, 1981. Although those ratings were given to the plaintiffs about one year after their filing of Conolly I, there is still a legitimate inference of discrimination because their lawsuit was ongoing and if AT & T was looking for a pretext to get rid of these employees it was in its interest to keep their ratings low. Conolly's November 1981 rating was 85.0, the lowest in his sub-branch. Turner received only a marginally satisfactory rating of 86.0

■ AT & T argues that Conolly's performance ratings subsequent to his original EEOC charge in 1978 were higher than the 1977 rating that precipitated his charge. This is a relevant fact and raises a genuine issue as to AT & T's intentions, but it is not dispositive. Though his ratings were marginally higher, they were sufficiently low to keep him ranked at the bottom of his group. AT & T also makes much of the fact that Al LeFavors, who is black, was responsible for Conolly's November, 1981 rating. To afford this fact dispositive weight would be presuming that blacks never discriminate against other blacks. The Court will not adopt such a presumption. *See Castaneda v. Partida,* 430 U.S. 482, 499–500, 97 S.Ct. 1272, 1282–1283, 51 L.Ed.2d 498 (1977) (declining to adopt behavioral presumption that Mexican–Americans would not discriminate against their own kind).

The plaintiffs' claim that they were denied recall privileges is contradicted by AT & T's assertion that they were subject to recall on the same basis as anyone else. This may be, but AT & T acknowledges that recommendations not to rehire, which is a separate process from recall from a layoff, were made by Conolly's and Turner's supervisors. There is nothing in the record to indicate that such adverse recommendations were made with regard to employees who were laid off but had not previously exercised Title VII rights. Thus there is an inference of retaliatory motive.

Of course, AT & T may well have had legitimate nondiscriminatory reasons for the layoff but whether its articulated reasons are bona fide or pretextual is a matter for the factfinder and cannot be resolved by a summary judgment motion.

For the foregoing reasons, AT & T's motion for summary judgment on the retaliation claim will be denied.

## VI. *Motion to Reconsider*

AT & T has asked the Court to reconsider its November 30, 1984 ruling denying summary judgment as to plaintiff Lewis in Conolly I.

The Court declines to alter its previous decision. As discussed in Part IV of the Court's opinion, above, the evidence that was sufficient to make out Lewis's *prima facie* case can also serve to raise a question as to whether AT & T's nondiscriminatory reasons are pretextual.

## VII. *Conclusion*

In accordance with the foregoing opinion, it is this 17th day of June, 1988, by the United States District Court for the District of Maryland,

ORDERED:

(1) that defendant's motion for summary judgment in Civil No. HM–83–1399 be, and the same hereby is, *Denied;*

(2) that defendant's motion for reconsideration of the Court's previous denial of summary judgment for defendant as to plaintiff Lewis in Civil No. HM–80–2733 be, and the same hereby is *Denied;*

(3) that counsel for the remaining parties in these consolidated cases report to the Court's chambers for a scheduling conference on Thursday, July 14, 1988 at 4:30 p.m.; and

(4) that the Clerk of the Court shall mail a copy of this Memorandum and Order to the parties.