19 F.3d 12
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Samuel J. TURNER, Jr., Plaintiff-Appellant,
v.
MARRIOTT CORPORATION, Defendant-Appellee.
 No. 93-1222.
 United States Court of Appeals, Fourth Circuit.
 Argued Oct. 26, 1993.
Decided March 1, 1994.
 
 Appeal from the United States District Court for the District of Maryland, at Baltimore. Frederic N. Smalkin, District Judge.
 Judith Lenore Fitzgerald, Baltimore, Md., for appellant.
 Gary L. Simpler, Shawe & Rosenthal, Baltimore, Md., for appellee.
 Stephen D. Shawe, Shawe & Rosenthal, Baltimore, Md.; Anna Mary Coburn, Marriott Corporation, Bethesda, Md., for appellee.
 D.Md.
 AFFIRMED.
 Before ERVIN, Chief Judge, PHILLIPS, Circuit Judge, and SMITH, United States District Judge for the Eastern District of Virginia, sitting by designation.
 OPINION
 PER CURIAM:
 
 
 1
 As part of a reduction-in-force (RIF), Marriott Corporation discharged Samuel Turner on January 12, 1991 after thirty-one years of service. He filed a claim with the EEOC on January 25, 1991 alleging race discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. Sec. 2000e-2(j), race discrimination under 42 U.S.C. Sec. 1981 and age discrimination under the Age Discrimination in Employment Act (ADEA), 29 U.S.C. Sec. 621 et seq. On March 17, 1992 the EEOC dismissed his claims, and on June 18, 1992 Turner filed suit in the United States District Court for the District of Maryland. On February 9, 1993 the district court granted Marriott's motion for summary judgment following discovery. Turner appeals that order of judgment and we affirm.
 
 I.
 
 2
 The issues that are presented on appeal include (1) whether Turner presented sufficient evidence of his Title VII race discrimination claim to withstand summary judgment; (2) whether Turner presented sufficient evidence of his Sec. 1981 race claim to withstand summary judgment or, alternatively, whether Sec. 1981 applies to Turner's claims; and (3) whether Turner presented sufficient evidence of his ADEA claim to withstand summary judgment.
 
 II.
 
 3
 Turner is an African-American male who was 51-years-old at the time of his discharge on January 12, 1991. He was hired by Marriott in 1960 as a dishwasher at the Baltimore-Washington International Airport. During his thirty-one year employment with the company, he was promoted numerous times and held nineteen different job titles. He worked at various Marriott locations in Chicago and the D.C. area.
 
 
 4
 At the time of his discharge, Turner was employed as a Marketing Representative II in the Marketing Department of the Marriott Distribution Center in Savage, Maryland.
 
 
 5
 Since 1990, Marriott has eliminated 1900 jobs because of adverse economic conditions. As part of the cost reduction efforts, two departments, Customer Service and Marketing, were consolidated at the Savage Distribution Center in January, 1991. One position in each department was eliminated. Turner's job was one of the eliminated positions. The reduction-in-force at the Distribution Center also resulted in the involuntary release of two other employees in other departments, both of whom were white and under age 40.
 
 
 6
 In determining which positions to eliminate, Marriott applied the corporate reduction policy developed by its Corporate Human Resources Department. First, the Vice President of Operations, William D. Lees, identified the number of positions to be eliminated and the classifications affected. Next, employees within the classification were compared on the basis of their most recent performance evaluation. If two employees had identical ratings, the most senior employee was retained. If ratings were unequal, the employee with the lowest rating was terminated. A final review by the Vice President of Vendor Relations and Human Resources, Chester Slaughter, was intended to ensure that the reductions did not have an unlawful impact on a protected class.
 
 
 7
 Turner and Barbara Forehand, the other employee terminated as a result of the consolidation of Customer Service and Marketing, both had performance ratings of 3, signifying "Average" performance. The five employees retained in the consolidated department had ratings of 1, "Outstanding," or 2, "Above Average." The remaining employees in Turner's department assumed Turner's duties. He received nine months severance pay and out-placement services.
 
 
 8
 Turner claims that he has been the victim of race and age discrimination. He filed an earlier discrimination claim against Marriott in 1973 which was settled in 1976. While that earlier complaint was pending, Turner received at least one promotion. Turner claims, however, that his discharge in 1991 was somehow the result of an ongoing conspiracy to terminate his employment because of his claim that settled fifteen years earlier.[1]
 
 III.
 
 9
 Under Title VII, it is unlawful for an employer to terminate an employee on the basis of the employee's race. According to McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), to prove employment discrimination, Turner must establish a prima facie case of discrimination. The burden then shifts to the employer to rebut the inference of discrimination by articulating some legitimate, nondiscriminatory reason for the employee's treatment. The employee must then show that the stated reason was in fact pretext and the employer's intent was discriminatory.
 
 
 10
 There are two ways of establishing a prima facie case of discrimination. The employee may either meet the four-part test first articulated in McDonnell Douglas in the illegal hiring context and later adapted to the illegal discharge context in Robertson v. State Dep't of Personnel, 481 F.Supp. 108 (D. Md.1978), or the employee may establish a prima facie case by other kinds of evidence supporting an inference of discrimination. Lewis v. AT & T Technologies, Inc., 691 F.Supp. 915, 919 (D. Md.1988). Turner attempts to meet the four-part test.
 
 
 11
 Turner asserts that the test in a discharge context requires a showing that (1) the employee is a member of a protected class; (2) he was laid off; (3) he was qualified to retain the position from which he was discharged; and (4) the employer retained employees with qualifications similar to those of the plaintiff. Lewis, 691 F.Supp. at 919. Because Turner's termination was the result of a RIF, however, the test should be modified to require a showing that (1) he was protected under the statute, (2) he was selected from the group or territory for termination, (3) he was performing at a level substantially equivalent to the lowest level of those retained in the group or territory and (4) the process of selection produced a residual work force of persons in the group or territory containing some unprotected persons who were performing at a level lower than that at which the plaintiff was performing. Duke v. Uniroyal, Inc., 928 F.2d 1413, 1418 (4th Cir.1991).
 
 
 12
 Turner clearly has not met the Duke test to prove discriminatory discharge in the context of a reduction-in-force. Turner had a performance rating of three while the retained employees in his department had ratings of either one or two. After his termination and the consolidation of the departments, all employees were performing at level one or two. Because none of the remaining employees were performing at a level lower than that at which he was performing, Turner has failed to establish his prima facie case.
 
 
 13
 Even if this court were to use the test Turner advocates, Turner still would not have met his burden. Giving Turner the benefit of the doubt that the retained employees were similarly qualified and not better qualified, thus establishing a prima facie case of discrimination, Marriott has rebutted that presumption by showing a legitimate nondiscriminatory reason for Turner's dismissal. In the context of company-wide cost reduction resulting in the elimination of 1900 jobs, Marriott applied the established company policy in choosing to terminate the employee in Turner's department with the lowest performance rating. Turner then had the burden of proving that the stated reason was mere pretext for actual discriminatory intent. Turner has presented no evidence other than his own affidavit and deposition alleging discrimination. Even if every act Turner alleged were true, those acts together would not establish an intent to discriminate against Turner on the basis of his race. We therefore affirm the district court's grant of summary judgment against Turner's Title VII claims.
 
 IV.
 
 14
 As Turner concedes, courts have not engaged in a separate analysis of the Sec. 1981 claim because the elements of a Title VII case of racial discrimination are the same as the elements of a prima facie claim under Sec. 1981. Warren v. Halstead Industries, Inc., 802 F.2d 746, 754 (4th Cir.1986); Lewis, 691 F.Supp. at 917 n. 4. Based on the above analysis, because Turner did not prove the elements of his Title VII claim, neither has he proved a claim under Sec. 1981.
 
 
 15
 As an alternative basis for dismissing Turner'sSec. 1981 claim, the district court found the statute not applicable to Turner's case. At the time of Turner's discharge and the filing of his claim, the applicability of Sec. 1981 was governed by Patterson v. McLean Credit Union, 491 U.S. 164 (1989). Patterson held that Sec. 1981 applies only to the making and enforcing of contracts; it does not apply to employment discharge situations. Patterson, 491 S.Ct. at 176.
 
 
 16
 In late 1991, the Civil Rights Act of 1991 amendedSec. 1981, overruling Patterson and making Sec. 1981 applicable in discharge contexts. The district court found, however, that the weight of the authority indicates that the amendment to the section is not effective retroactively and does not apply to Turner's claim. See Gersman v. Group Health Ass'n, 975 F.2d 886 (D.C.Cir.1992). We agree that the 1991 amendment to Sec. 1981 does not apply retroactively. Accordingly, Turner's Sec. 1981 claim must fail.[2]
 
 V.
 
 17
 McDonnell Douglas and its progeny also provide the guidelines for establishing age discrimination under the ADEA. Conkwright v. Westinghouse Electric Corp., 933 F.2d 231, 234 (4th Cir.1991). To establish age discrimination, Turner must again meet the four-part test described above in the context of Title VII showing that (1) he was protected under the statute, (2) he was selected from the group or territory for termination, (3) he was performing at a level substantially equivalent to the lowest level of those retained in the group or territory and (4) the process of selection produced a residual work force of persons in the group or territory containing some unprotected persons who were performing at a level lower than that at which the plaintiff was performing. Duke, 928 F.2d at 1418. Because the residual employees were all performing at a level of satisfaction higher than that of Turner, he has not established a prima facie case of age discrimination.
 
 
 18
 The district court also found that Turner's ADEA claim was barred because he did not file it initially with the Maryland Human Relations Committee (MHRC). Since we hold that Turner failed to make out a prima facie case of age discriminaiton, we do not find it necessary to address that alternative ground for decision. The district court properly granted Marriott summary judgment on this issue.
 
 VI.
 
 19
 The decision of the district court is therefore affirmed.
 
 
 
 [1]
 Turner's claims of discrimination are based solely on the following allegations made in his affidavit and deposition: (1) at an unspecified time, he requested a raise and his manager told him that if he didn't like the job to find a new one; (2) at an unspecified time, a supervisor, Ernie Colquette, told him that a directive to fire him had been issued by an unspecified individual; (3) in 1983, Tom Mitts threatened to fire him because he did not participate in taking inventory; (4) in 1986 and 1987, his supervisor at the time, Joel Friebaum, reduced Turner's responsibilities; made comments about the 1973 EEOC claim Turner had filed; and told Turner no one liked him and Friebaum was going to get rid of him; (5) Friebaum later disagreed with a performance rating given by Turner's new supervisor, Wright, and Friebaum tried to issue an unsatisfactory rating. Friebaum's supervisor, Lees, had Friebaum's rating removed and Wright's rating remained in Turner's file; (6) Friebaum mentioned to Turner on several occasions that he would prefer a younger staff; (7) on four occasions from 1973 to 1986, white applicants were given jobs for which Turner had applied and in 1981, Turner was offered a position with a lower salary than that of a white employee in the same position; (8) some months after Turner was discharged, a white female was hired as a marketing representative in Turner's former office. No additional evidence other than Turner's assertions supports these claims. It should be noted that the termination decision was made by Lees and Slaughter; Friebaum was not involved in Turner's discharge
 
 
 [2]
 The Supreme Court heard argument in Landsgraf v. USI Film Products, 968 F.2d 427 (5th Cir.1992), and Rivers v. Roadway Express Inc., 973 F.2d 490 (6th Cir.1992), on October 13, 1993 on the issue of whether the 1991 Civil Rights Act applies to cases that were pending when the Act became law. In any event, Turner'sSec. 1981 claim must fail because he has not established the elements of that claim